UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TINA M.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

19-CV-1481-LJV
DECISION & ORDER

---

On November 1, 2019, the plaintiff, Tina M. ("Tina"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On March 30, 2020, Tina moved for judgment on the pleadings, Docket Item 7; on July 29, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on August 20, 2020, Tina replied, Docket Item 13.

For the reasons stated below, this Court grants Tina's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ("ALJ")] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Tina argues that the ALJ erred in three ways.  Docket Item 7-1.  First, she argues that the ALJ failed to properly evaluate her fibromyalgia.  *Id.* at 16-19.  Second, she argues that the ALJ failed to properly evaluate the opinion of a consultative physician,

2

Abrar Siddiqui, M.D.  *Id.* at 19-26.  And finally, she argues that the ALJ erred by failing to address the frequency and time that she would need to use the restroom during the workday.  *Id.* at 26-30.  This Court agrees that the ALJ erred and, because that error was to Tina's prejudice, remands the matter to the Commissioner.

**I.    THE ALJ'S RFC DETERMINATION**

In making a disability determination, the ALJ must engage in a five-step evaluation process.[3]  *See* 20 C.F.R. 416.920(a).  Where, as here, an ALJ determines that a claimant's medical impairments do not meet or equal an explicit list of impairments,[4] The Code of Federal Regulations ("the regulations") requires the ALJ to determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  "As explicitly stated in the regulations, RFC is a medical assessment; therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision."  *Lowe v. Colvin*, 2016 WL 624922, at *5 (W.D.N.Y. Feb. 17, 2016) (internal citations omitted); *see also* 20 C.F.R. § 416.945.

A claimant's RFC "is the most [she] can still do despite [her] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*  In reaching a decision, the ALJ "must provide an

---

[3] This Court assumes familiarity with the details of the evaluation process and will refer only to the steps necessary to explain its decision.

[4] The ALJ concluded that Tina "[did] not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments . . .," *id.* at 82.

3

'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)).

Here, the ALJ determined that Tina's Crohn's disease and fibromyalgia constituted severe impairments.  Docket Item 4 at 81.  He also found that Tina had the RFC

> to perform light[5] work . . . except she is prohibited from climbing ladders, ropes and scaffolds.  She is further limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.  She would need to avoid concentrated exposure to slippery and uneven surfaces as well as hazardous machinery, unprotected heights, and open flames.  Also, she would need ready and easy access to a bathroom.

*Id.* at 83.  In reaching that determination, the ALJ discounted Tina's testimony about the effects of her fibromyalgia because "the record does not support the alleged severity of the fibromyalgia" and "the findings do not reflect the degree of severity alleged."  *See id.* at 86.  And he repeatedly found that treatment effectively managed Tina's Crohn's disease.  *See id*. at 84-85.

## II.   FIBROMYALGIA

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).

persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2 (S.S.A. July 25, 2012). Due to the complex nature of the disease, "courts recognize that fibromyalgia . . . eludes objective measurement." *Campbell v. Comm'r of Soc. Sec.*, 2017 WL 9509958, at *6 (N.D.N.Y. Apr. 14, 2017), *report and recommendation adopted*, 2017 WL 2304218 (May 26, 2017) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 104, 108 (2d Cir. 2003)) (quotation marks and alterations omitted). As a result, "a number of district courts have overturned denials of disability claims based on fibromyalgia where the ALJ's determination turned on the lack of 'objective' evidence in the record to support the claimant's subjective complaints of pain." *Lim v. Colvin*, 243 F. Supp. 3d 307, 316-17 (E.D.N.Y. 2017) (collecting cases).

Tina argues that given her valid fibromyalgia diagnosis, the ALJ should have credited her testimony regarding the pain and limitations that she suffered. For example, Tina testified that her fibromyalgia keeps her from walking more than ten minutes without needing to sit down and causes so much pain that her "skin move[s] when it acts up." *See* Docket Item 4 at 43-44, 46. She said that she could not get comfortable at the hearing because "[her] body just feels, like, pins and needles . . . from [her] neck down." *Id.* at 43. She feels "heat" and "stabbing" pain in her back, which is aggravated by "pretty much any[ activity]." *Id.* at 36. She can stand for ten minutes before needing to sit and can lift only five pounds. *Id.* at 39-40.

In his decision, the ALJ found that Tina's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Tina's] statements concerning the intensity, persistence, and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence

in the record." *Id.* at 84.  He also found that her "reported abilities [were] inconsistent with the alleged extent of [her] difficulties." *Id.*  As a result, the ALJ found that Tina had the RFC to perform light work—that is, to lift up to 20 pounds, as well as to walk and stand a good deal—all contrary to what Tina said she could do.  *Id.* at 83 (RFC finding that Tina can do light work); *see* 20 C.F.R. § 416.967(b) (defining light work).

As support for his RFC determination, and specifically his conclusion that "the record does not support the alleged severity of the fibromyalgia," the ALJ cited several unremarkable physical examination results.  *Id.* at 86-87 (citing, for example, examination results indicating normal gait and a full range of motion, as well as normal x-ray results).  As courts have repeatedly acknowledged, however, fibromyalgia generally lacks objective support. *See, e.g.*, *Green-Younger v. Barnhart*, 335 F.3d 99, 108–09 (noting that "physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions") (internal quotations omitted); *Lim*, 243 F. Supp. 3d at 316-17 (collecting cases).  Moreover, Tina's complaints are consistent with fibromyalgia symptoms.  *Cf. Green-Younger*, 335 F.3d at 108 ("With regard to the issue of [the plaintiff]'s credibility, her complaints of pain in her back, legs, and upper body, fatigue, and disturbed sleep are internally consistent and consistent with common symptoms of fibromyalgia.").  Accordingly, the ALJ erred to the extent that he discounted Tina's statements because they lacked objective support.

That is not to say that the ALJ was required to fully credit Tina's testimony.  And the ALJ also found that "the claimant's reported abilities are inconsistent with the alleged extent of the difficulties," apparently suggesting that Tina was embellishing her

6

limitations.  *See* Docket Item 4 at 84.  But on close inspection, those "inconsisten[cies]" are not inconsistent at all.

For example, the ALJ said that Tina "testified that she does not drive"—supposedly inconsistent with her having "reported driving her children to sport activities and . . . dr[iving] to the consultative examination."  *See id.*  But Tina's hearing testimony, which the ALJ cited for the inconsistency, included the following exchange between the ALJ and Tina about driving:

> Q:  Do you drive at all?
>
> A:  No, unless I need to, I don't drive.
>
> Q:  Well, either you do drive or you don't drive which one is it?
>
> A:  I - - I usually do not drive.  My husband has FML Family Medical Leave so he usually leaves work to come home to take me to the doctor's or take my daughter to the doctor's.  If there is some reason that he cannot leave work, I will take my daughter to the doctor's or I will go myself.
>
> Q:  Any difficulties with driving when you are driving?
>
> A:  Yes.
>
> Q:  Tell me about that.
>
> A:  I don't like to drive because it's just too much pressure when I'm driving.  I'm putting my foot down and it causes a lot of pressure and it's very uncomfortable.

*Id.* at 27-28.  So contrary to the ALJ's decision, Tina never "testified that she does not drive."  In fact, she said that she drives when she must but that it is very difficult.

Likewise, the ALJ noted that according to the medical records, Tina could cook, clean, and do laundry—all supposedly "inconsistent with her . . . testimony."  *See id.* at 84.  But at the hearing in December 2017, Tina said that while she currently could not

7

cook, clean, or do laundry, she had done "chores" including those until a year earlier. *Id.* at 33.  So the records that the ALJ cited as indicating she could do those tasks—the adult function report Tina completed in August 2015 and the consultative examination report from October 2015 —were not at all inconsistent with her hearing testimony. What is more, the 2015 records did not show that Tina was able to perform those tasks without difficulty.  On the contrary, the records that the ALJ cited, *see id.* at 84, indicated that even in August 2015 Tina could cook only premade meals in the microwave "because [she could not] stand long enough to make homemade meals"; she did the laundry but could not "carry laundry to the basement";  she went shopping once a month "but if [she was] getting something heavy [she could not] go alone"; and she did not do much house or yard work because it caused her too much pain.  *See id.* at 221-22.

And even if all that were not true—even if the ALJ did not err in finding nonexistent inconsistencies and relying on the lack of objective evidence of fibromyalgia to discredit Tina—he still would have erred by failing to fill a clear gap in the record and by therefore relying on his lay judgment to assess the impact of Tina's fibromyalgia.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)).  Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'"  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47).

The Commissioner's regulations further explain that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner "will request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 416.913(b)(6)[6]) (additional citation omitted). That is so because the opinions of treating sources—such as physicians who have "ongoing treatment relationship[s]" with claimants and therefore are most able to "provide . . . detailed, longitudinal picture[s] of [claimants'] medical impairments"—are entitled to "controlling weight" so long as they are "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the claimant's] case record." *See* 20 C.F.R. §§ 416.913(a) (2015), 416.927(c)(2) (2015); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).

The Second Circuit has observed that the "plain text" of section 416.913(b)(6) "does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity. The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Tankisi*, 521 F. App'x at 33 (emphasis in original) (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted). Although "remand is not

---

[6] This section was amended effective March 27, 2017. Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017). Because Tina protectively filed for disability benefits on June 8, 2015, alleging disability beginning on January 1, 2012—that is, before the date the changes became effective—her claim is governed by the prior regulation. *See id.* at 5844-46.

9

always required when an ALJ fails in his duty to request [medical source] opinions [from treating sources], particularly where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," remand is appropriate when the records are not otherwise complete.  *See Tankisi*, 521 F. App'x at 34.  That is the case here.

Although there was one medical opinion in the record, that opinion was extremely limited and vague.  *See* Docket Item 4 at 412-15 (2015 opinion of consultative physician, Dr. Siddiqui, stating that Tina had a number of "mild to moderate" physical limitations" "mainly due to [her] history of fibromyalgia[,] . . . a chronic debilitating disease with no effective treatment").  Moreover, the ALJ gave that opinion only "some weight."[7]  *Id.* at 87.  He noted that "although [the] opinion was based on a one-time examination of the claimant's condition, it [was] reasonably consistent with the findings throughout the record"—findings the ALJ had already stated did not amount to objective proof of Tina's fibromyalgia pain.  *Id.*  That explanation, coupled with the fact that Dr. Siddiqui never defined what he meant by "mild to moderate limitations  . . . to sit, stand, climb, push, pull, or carry heavy objects," makes it indeed likely that the ALJ relied on his lay judgment to determine Tina's RFC—something he was not permitted to do.

While an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), he "cannot substitute his own lay opinion in place of established acceptable medical authorities or treating sources," *Morseman v. Astrue*, 571 F. Supp.

---

[7] Because the ALJ's handling of Dr. Siddiqui's opinion may change on remand when he reexamines Tina's fibromyalgia, the Court will not reach Tina's argument that ALJ erred in evaluating the opinion.

2d 390, 397 (W.D.N.Y. 2008) (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)). In other words, an ALJ is not a medical professional and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Wilson v. Colvin*, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citing *Dailey v. Astrue*, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010), *report and recommendation adopted*, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010). As a general rule, "where the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner "may not make the connection himself." *Perkins v. Berryhill*, 2018 WL 3372964, at * 3 (W.D.N.Y. July 11, 2018) (citing *Jermyn v. Colvin*, 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of these medical sources assessed [the p]laintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination.")).

"[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). Only in limited circumstances, such as "when the medical evidence shows only minor physical impairments, [may] 'an ALJ permissibly . . . render a common[]sense judgment about functional capacity even without a physician's assessment.'" *Perkins*, 2018 WL 3372964, at *3 (citing *Wilson*, 2015 WL 1003933, at *21).

Fibromyalgia is not one such "minor physical impairment." And because there was no opinion evidence for the ALJ to rely on, his lay opinion regarding how fibromyalgia would impact Tina's functional abilities constitutes another independent error requiring remand.

11

For example, the ALJ found that Tina could perform "light work," Docket Item 4 at 83, which requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. § 416.967(b).  At the hearing, however, Tina testified that she could lift only five pounds.  Docket Item 4 at 40.  And while the consultant physician opined that Tina was limited as to the weight that she could carry, *see id.* 415 (Dr. Siddiqui's report concluding that Tina had "mild to moderate limitations" in her ability to "carry heavy objects"), no doctor ever opined about just how much she could lift.  Therefore, at least in this regard, the ALJ impermissibly relied on his lay opinion by concluding, without medical support, that Tina could perform work that she testified she could not do.

For all those reasons, the ALJ erred in his evaluation of Tina's fibromyalgia, and remand is required.

## III.     CROHN'S DISEASE

The medical record also indicates that Tina suffers from digestive issues, including Crohn's disease—a condition the ALJ found to be a severe impairment.  Docket Item 4 at 81.  As the ALJ recognized in his decision, from 2012-2016, Tina was regularly in and out of the hospital with stomach and digestive problems.  *Id.* at 84-85 (summarizing emergency room visits, hospitalizations, and treatment from 2012-17).

Tina testified that she had to use the bathroom "at least ten times or more" a day and that she had needed to do so "for over a year."  *Id.* at 41.  She explained that most of her visits to the bathroom involved a bowel movement that often contained "blood and liquid."  *Id.*  Tina maintained that each visit to the bathroom lasted a minimum of

twenty minutes and sometimes "almost a good hour."  *Id.* at 42.  Based on her testimony, she needed to spend at least three hours a day in the bathroom.

At the hearing, the vocational expert, Nicholas Fidanza, addressed several hypotheticals relating to Tina's need for a restroom and how that would impact her ability to work.  *See* Docket Item 4 at 55-58.  The ALJ asked whether a limitation requiring "ready access to a bathroom . . . relatively nearby within easy access" would impact the jobs of electronics worker, small-product assembler, and mail sorter.  *Id.* at 54-55.  Mr. Fidanza responded that it would not.  *Id.*  He testified, based on his experience, that "most work places have bathrooms" and that workers could use those bathrooms "at their discretion."  *Id.* at 57.  But Mr. Fidanza also said that if someone were off task more than ten percent of the day—approximately 50 minutes—then that person would be "unable to sustain competitive employment."  *Id.* at 56.  And when Tina's attorney asked whether a worker could be off task up to two hours a day because of bathroom breaks, the ALJ interrupted and said that Mr. Fidanza had already answered that an individual could be off task only "up to 50 minutes in a day."  *Id.* at 58.

The ALJ ultimately concluded that "the objective record fails to establish that [Tina's] Crohn's disease had intense, persistent, and limiting effects to the extent alleged."  *Id.* at 86.  Although he determined that Tina "would need ready and easy access to a bathroom," he failed to make specific findings as to the frequency or duration of Tina's bathroom use.  *Id.* at 83.  He did not, for example, address whether her bathroom breaks would fit into the standard breaks in a workday or whether the frequency with which she would need to use the restroom would require that she use the restroom more than that.  Nor did he discuss whether the total amount of time Tina

needed to spend in the restroom would exceed the maximum of fifty minutes that the vocational expert said workers could be off task.  The failure to address that issue was another error requiring remand.  *See, e.g.*, *Lowe*, 2016 WL 624922, at *6 (remanding because the ALJ determined the plaintiff would need "ready access to toilet facilities" without making specific findings regarding the frequency or duration of necessary visits to the bathroom) (collecting cases); *see also Spaulding v. Astrue*, 702 F. Supp. 2d 983, 985 (N.D. Ill. 2010) (holding that the ALJ's failure to sufficiently articulate his finding regarding the frequency and duration of the plaintiff's required bathroom breaks precluded meaningful judicial review and required remand).

      Even if this Court were to assume that the ALJ implicitly decided that Tina's need for a restroom would not exceed fifty minutes a day, the Court is left to speculate as to how the ALJ reached such a determination.[8]  In other words, the ALJ did not provide an "accurate and logical bridge" for this Court to follow between the determination that Tina needed "ready and easy access to a bathroom" and his conclusion that she was not disabled.  *Craft*, 539 F.3d at 673 (explaining that the ALJ must provide an "accurate and

---

[8] The record does not include any medical opinion regarding the frequency and length of time that Tina would need to use the bathroom.  *Cf.* Docket Item 4 at 415 (the sole medical opinion in the record—a 2015 opinion by consultative physician Dr. Siddiqui—diagnosing Tina with a "[h]istory of Crohn disease," but failing to mention how that might impact Tina in his "medical source statement").  For that reason, and because the ALJ discounted Tina's own testimony regarding the severity of her digestive issues, this created another gap in the record.  *See, e.g.*, *Rosa* 168 F.3d at 79 (quoting *Perez*, 77 F.3d at 47) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'").

logical bridge" between the evidence and his conclusions before the court can conduct "meaningful judicial review").[9]

For both of those reasons, the ALJ's error in assessing Tina's Crohn's disease requires remand as well.[10]

---

[9] Just as the ALJ found nonexistent inconsistencies to discredit Tina's testimony about her fibromyalgia, he downplayed the severity of her digestive issues as well. For example, the ALJ discounted Tina's emergency room visits in 2012 and 2013, noting that she was discharged from each "with improved symptoms." *See* Docket Item 4 at 84-85. But he missed the forest for the trees: while Tina's symptoms might have been managed during, and her condition improved after, each hospital visit, that does not change the fact that she needed to go to the hospital in July, August, November, and December 2102; and in January, June, and August 2013—that is, an average of every other month for a year. *See id.* at 84-85.

[10] The Court "will not reach the remaining issues raised by [Tina] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

**<u>CONCLUSION</u>**

For all the above reasons, the Commissioner's motion for judgment on the pleadings, Docket Item 12, is DENIED, and Tina's motion for judgment on the pleadings, Docket Item 7, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   April 7, 2021
         Buffalo, New York

*Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE